Rockingham
No. 2006-541

### THE STATE OF NEW HAMPSHIRE

v.

### DANIEL SODOYER

Argued: June 7, 2007
Opinion Issued: August 24, 2007

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, and *Nicholas Cort*, assistant attorney general, on the brief, and *Mr. Fuller* orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Daniel Sodoyer, appeals an order of the Superior Court (*Nadeau*, J.) denying his motion to suppress. We reverse and remand.

The following appears in the record: On November 30, 2004, police officers responded to a report of an assault at an apartment in Derry. Present in the apartment were the defendant, Jeffrey LeBlanc and a woman. Observing cut plastic straws in the living room, one of the officers asked LeBlanc about them and he admitted that they were for ingesting cocaine. Suspecting there may be other drugs in the apartment, the officers sought to search it. LeBlanc admitted to living in the apartment and stated that John Templeton was the actual leaseholder, but he no longer lived there and "hadn't been living there for some time." According to LeBlanc, all that remained from Templeton's occupancy were a living room chair and couch. The defendant denied residing in the apartment. After being contacted by the police, Templeton arrived at the scene and gave consent to search the premises. LeBlanc also gave consent to search the bedroom he was occupying.

A second bedroom was also searched in the presence of the defendant, who did not object. During the search, marijuana was discovered as well as items bearing the defendant's name, including court documents and a wallet. As a result of finding the drugs and the identifying possessions, the officers arrested the defendant for possession of marijuana. The defendant's motion to suppress was denied. This appeal followed.

The defendant argues that the search of the second bedroom violated his rights under the Fourth Amendment to the Federal Constitution and Part I, Article 19 of the New Hampshire Constitution. He also argues that he had a reasonable expectation of privacy in that bedroom sufficient to have required his consent or, alternatively, a warrant to search the room, and the failure of the police to obtain either violates his rights. Our review of the trial court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the trial court level in the first instance. *State v. Gubitosi*, 152 N.H. 673, 676 (2005).

██ "Under the New Hampshire Constitution, all warrantless searches are *per se* unreasonable, unless they conform to the narrow confines of a judicially recognized exception." *State v. Szczerbiak*, 148 N.H. 352, 354 (2002) (quotation omitted). "Absent a warrant, the burden is on the State to prove that the search was valid pursuant to one of these exceptions." *Id.* (quotation omitted). One such exception exists where the defendant has consented to the search. *Id.* We first address the defendant's claim under

the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

■■■ The defendant specifically argues that the consent given by Templeton was ineffective to permit a search of the second bedroom because Templeton lacked actual or apparent authority to consent. Consent to search is valid against a defendant when conferred by a third party with "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *see State v. Wong*, 138 N.H. 56, 61 (1993). Because Templeton no longer lived in the apartment, "hadn't been living there for some time" and owned none of the items in the second bedroom, he did not have the requisite actual authority over the second bedroom to consent to its search. *See Wong*, 138 N.H. at 61.

■ The State argues that third-party consent may be given if there is apparent authority, even if there is no actual authority. The doctrine of apparent authority validates a search if the police reasonably, but mistakenly, believe that a third party consenting to the search has the authority to do so. *State v. Sawyer*, 147 N.H. 191, 194 (2001), *cert. denied*, 537 U.S. 822 (2002); *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). The standard for assessing apparent authority is an objective one: to determine whether a police officer's belief was objectively reasonable, a court must examine whether the facts available to the officer at the moment would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises. *Sawyer*, 147 N.H. at 194. If the surrounding circumstances would cause a reasonable person to doubt whether the third party had the requisite authority, then the officer must make further inquiry to ensure that the person giving consent has authority to do so. *Id.*

■ It was not objectively reasonable that authority over an occupied bedroom would rest with someone who was no longer in residence and who was only nominally responsible for the premises because the lease still bore his name. Templeton had moved all of his belongings out, except for two pieces of furniture in the living room, a fact of which the officers were aware. The officers were further aware that, though LeBlanc alone had Templeton's permission to occupy the apartment, it had served as "a crash pad" for individuals other than LeBlanc. Thus, the police were mistaken to conclude that Templeton had apparent authority to consent to a search of the second bedroom.

With Templeton's consent to search the bedroom invalid, the defendant's consent was required in order to search the second bedroom

without a warrant. The State argues that the defendant waived his right to consent by remaining silent during the search regarding his resident status in the apartment after first denying he lived there.

There is a split of authority as to whether denying a possessory interest automatically leads to a waiver of privacy rights in the place being searched. The Fifth Circuit has held that the rights of a defendant against illegal search do not "evaporate[] simply because [the defendant] fail[s] to make incriminating admissions in response to police questioning. One does not lose the legitimate expectation of privacy in a residence merely by denying an interest therein. Indeed, a misleading response to an officer's question is a far cry from consent to search." *United States v. Vega*, 221 F.3d 789, 797 (5th Cir. 2000), *cert. denied*, 531 U.S. 1155 (2001) (quotation omitted). *Accord United States v. Brown*, 64 F.3d 1083 (7th Cir. 1995); *United States v. Morales*, 737 F.2d 761 (8th Cir. 1984); *Commonwealth v. Sandler*, 335 N.E.2d 903 (Mass. 1975). *But see United States v. Sweeting*, 933 F.2d 962 (11th Cir. 1991); *State v. Ross*, 49 S.W.3d 833, 841 (Tenn. 2001) ("when one disclaims interest in the premises or possessions searched or in the articles seized he cannot question the legality of the search and seizure" (quotation omitted)).

However, we need not reach the question of what effect the denial of a possessory interest in the residence has on a defendant's rights against an illegal search. The defendant's denial that he did not live in the apartment is not the same as disavowing *any* privacy interest in his belongings. He simply denied *living* in the apartment; he was not asked, nor did he answer any other question or volunteer any statement about what kind of connection he had to the second bedroom. If the defendant was a temporary house guest, he might have an expectation of privacy. *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990).

■ The defendant's initial denial of residence and then silence during the search cannot be equated to a waiver of his rights. As far as the record reflects, he truthfully answered the only question he was asked. "[I]t can hardly be said that Fourth Amendment rights evaporate merely because of a failure to make incriminating admissions in response to police inquiries." 6 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.3(a), at 140 (4th ed. 2004). Our constitutional system does not demand that a defendant surrender information that could incriminate him in order to avail himself of another constitutional right. "To require a person to surrender one constitutional right in order to gain the benefit of another is simply intolerable .... There are some choices which the State cannot require a defendant to make, and a choice

between constitutional rights is one of them." *State v. Hearns*, 151 N.H. 226, 238 (2004) (quotations omitted).

Without consent from either Templeton or the defendant, a warrant was required to search the second bedroom; thus, the search was illegal.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.