[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14522
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cr-00056-LGW-JEG-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,


versus


JASON CHRISTOPHER WALKER,
a.k.a. Weezey,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 11, 2012)

Before TJOFLAT, EDMONDSON and ANDERSON, Circuit Judges.

PER CURIAM:

Jason Christopher Walker appeals his convictions and total 225-month sentence for three counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d); and one count of unlawful transfer of a firearm, in violation of 26 U.S.C. §§ 5812, 5861(e). First, he argues that the district court clearly erred in overruling his Batson objection. Second, he argues that the court abused its discretion in removing an empaneled juror due to his prior knowledge of the underlying investigation. Third, he argues that the court's supplemental jury instruction was erroneous. Fourth, he argues that the magistrate judge erred in denying his motion to sever the counts in the indictment. Fifth, he argues that the court erred in applying the armed career criminal statutory sentencing enhancement. Sixth and finally, he argues that the court clearly erred in refusing to apply an acceptance of responsibility sentence reduction and thereby punished him for going to trial.

I.

A district court's resolution of a Batson objection that turns on credibility is entitled to great deference and is reviewed only for clear error. United States v. Hill, 643 F.3d 807, 837-38 (11th Cir. 2011). "A district court's findings regarding whether a peremptory strike was exercised for a discriminatory reason largely

2

involve credibility determinations and are therefore entitled to great deference." United States v. Novaton, 271 F.3d 968, 1001 (11th Cir. 2001).

Under the Equal Protection Clause, the government may not "challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the [government]'s case against a black defendant." Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986). The district court applies a three-step analysis in evaluating equal protection challenges to the government's use of peremptory strikes. Hill, 643 F.3d at 837. First, a defendant must make a prima facie showing of purposeful discrimination based upon a prohibited ground. Id. Second, upon such a showing, the government must articulate a nondiscriminatory explanation for the challenge. Id. Third, the trial court must determine if the defendant established purposeful discrimination. Id. Throughout, the ultimate burden of persuasion rests with the defendant. Id. Generally, the defendant must show that the government attempted to exclude "as many black persons as it could from the jury." Id. at 839.

We generally will not address an argument, raised for the first time on appeal, that "there were similarly situated white venire members whom the prosecution did not strike." United States v. Houston, 456 F.3d 1328, 1338 (11th Cir. 2006). The record on appeal would likely be insufficient to consider such an

3

argument, and the district court is not required to sua sponte *"draw comparisons that no party asked it to draw."* Id. at 1339.

Here, even assuming arguendo that Walker made out a prima facie case below, the district court did not clearly err in overruling Walker's Batson challenge. The government articulated legitimate race-neutral reasons for its peremptory challenges—namely, that the first prospective juror was unemployed, and the second was not dressed appropriately for court and had not received a high school diploma. The court properly relied on its independent observations of both the prosecutor and the challenged jurors in determining that the government's proffered explanations were credible, and nothing in the record suggests otherwise. Three black venire members were not challenged by the prosecutor. Insofar as Walker now argues that there were similarly situated white jurors who were not challenged by the prosecution, this argument was not before the district court, the record is otherwise silent, and we will not address it on appeal.[1]

## II.

A district court's decision to remove a juror is reviewed only for abuse of discretion. United States v. Augustin, 661 F.3d 1105, 1129 (11th Cir. 2011). The court may excuse a juror and replace him with an alternate if, prior to

---

[1] In any event, we find no merit to this contention.

4

deliberations, the juror is found to be "unable" or "disqualified" to perform his duties. United States v. Fajardo, 787 F.2d 1523, 1525 (11th Cir. 1986). Absent a showing of bias or prejudice to the defendant, we will not disturb the district court's decision. United States v. De La Vega, 913 F.2d 861, 869 (11th Cir. 1990). Prejudice includes discharge of a juror without factual support or for a legally irrelevant reason. Id. The trial judge "does not need a defendant's consent to replace a juror with an alternate before the jury retires; all that is required is a reasonable cause for the replacement." Fajardo, 787 F.2d at 1526.[2]

Here, the district court did not abuse its discretion in removing the juror. After opening statements, the juror said that he was familiar with the underlying undercover investigation. Specifically, two of his restaurant's former employees frequented the storefront to buy cigarettes and, following the arrests, had told him that their friends were "set up" in "an entrapment type thing." Although the juror ultimately said that he would base his verdict solely on the evidence presented at trial, he had initially stated that he was unsure if he would be able to set aside this prior information. The court, based on its own observations of the juror during

---

[2]     Walker cites the standard for striking a juror when the jury has already begun deliberations. In that situation, we apply a more stringent standard because of the danger that a dissenting juror may be excused based on the court's "mistaken view that the juror is engaging in impermissible nullification." Augustin, 661 F.3d at 1129. However, as Walker acknowledges, the juror in this case was excused well before deliberations, and thus the heightened standard is not applicable here.

5

questioning, found that he was incapable of disregarding the prior information and deliberating impartially. We find no abuse of discretion in the court's decision to excuse a juror who had previous knowledge of some of the facts underlying Walker's case.

III.

We ordinarily review for abuse of discretion the district court's response to questions from the jury. United States v. Phaknikone, 605 F.3d 1099, 1107 (11th Cir. 2010). Additionally, a district court's refusal to give a requested instruction is generally reversible error only where (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to defend himself. United States v. Carrasco, 381 F.3d 1237, 1242 (11th Cir. 2004). There generally is a "strong presumption" that jurors follow instructions given to them by the district court. See Hill, 643 F.3d at 829.

Here, Walker did not object to the district court's supplemental instruction. Although we review this objection only for plain error, see United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996), we find no error at all by the district court. The court expressly instructed the jury to consider the supplemental instruction along with all the previously given charges, and nothing in the record

6

casts any doubt on the "strong" presumption that the jury followed its instructions. See Hill, 643 F.3d at 829.

IV.

Walker contends that the magistrate and district court erred by not granting Walker's motion to sever his charges. We will reverse only where the district court abused its discretion and the defendant suffered compelling prejudice. United States v. Hersh, 297 F.3d 1233, 1243 (11th Cir. 2002).

It seems unlikely that Walker properly objected to the magistrate's findings, see Fed. R. Crim. P. 59(a); United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009), but even addressing the merits, we find no abuse of discretion in the district court's decision. The underlying facts of the three transactions overlapped significantly with one another, and conducting separate trials would clash significantly with our interest in judicial economy and administration. See United States v. Kopituk, 690 F.2d 1289, 1318 (11th Cir. 1982).

V.

We review de novo questions of statutory interpretation, including whether offenses count as separate felonies for purposes of the enhanced sentence provision of the Armed Career Criminal Act ("ACCA"). United States v. Lee, 208 F.3d 1306, 1307 (11th Cir. 2000). Under the ACCA, a defendant is subject to a

7

fifteen-year statutory minimum sentence where he both violated 18 U.S.C. § 922(g) and has three prior convictions for a violent felony or serious drug offense, "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

Generally, burglary constitutes a violent felony for purposes of the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii). The district court, in applying the provisions of the ACCA to a prior conviction to which the defendant pleaded guilty, should generally look only to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard v. United States, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005); United States v. Sneed, 600 F.3d 1326, 1332-33 (11th Cir. 2010) (ruling that Shepard also limits the evidence that the court can consider in determining whether the underlying crimes occurred on different occasions).

As long as the predicate crimes were successive rather than simultaneous, "they constitute separate criminal episodes for purposes of the ACCA." Lee, 298 F.3d at 1307. Crimes are "successive" where they were separated by a meaningful opportunity to desist the criminal activity and reflected "distinct aggressions,"

8

particularly where the defendant committed the crimes in different places.  Id. (quotation omitted).

Here, the district court did not err in applying the armed career criminal sentence enhancement under the ACCA.  Walker's prior indictment alleged that the burglaries occurred at four different storage units located at two different addresses.  None of the burglaries could have been committed simultaneously. See United States v. Pope, 132 F.3d 684, 692 (11th Cir. 1998).

Indeed, Walker does not dispute this conclusion.  Rather, he argues only that he might have been convicted for being an accessory after the fact, rather than for being the principal perpetrator of the four burglaries.  Walker provides no Shepard documents to support this bald assertion.  See Sneed, 600 F.3d at 1332-33.  The indictments for all four counts of burglary stated that Walker "without authority and with the intent to commit a theft therein, entered a building."  The district court did not err by relying on these Shepard documents to conclude that Walker was the perpetrator of the underlying burglaries.

## VI.

We have held that, "[b]ecause demonstration of whether or not the defendant has personally accepted responsibility for his criminal conduct requires a consideration of both objective factors and subjective considerations of the

9

defendant's demeanor and sincerity, the district court's determination will not be overturned unless it is without foundation." United States v. Castillo-Valencia, 917 F.2d 494, 500 (11th Cir. 1990). Although a defendant cannot be punished by a more severe sentence because he exercised his constitutional right to proceed to trial, the simple fact that he "was given a longer sentence after trial than he might well have received had he plea bargained is not sufficient to show that he was penalized for going to trial." Cole v. Wainwright, 614 F.2d 67, 69 (5th Cir. 1980).

Section 3E1.1 of the Guidelines states that the offense level is decreased by two points if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G § 3E1.1(a). The commentary to § 3E1.1 explains that the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, cmt. 2. "Section 3E1.1(a) is not a punishment; rather, the reduction for acceptance of responsibility is a reward for those defendants who express genuine remorse for their criminal conduct." United States v. Carroll, 6 F.3d 735, 740 (11th Cir. 1993).

However, there are "rare situations" where a defendant who proceeded to trial could qualify for a downward adjustment, such as where a defendant went to

trial "to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Id. at 741. Additionally, a defendant is not barred as a matter of law from receiving the adjustment "merely because he asserted an entrapment defense at trial, even though some courts have viewed the assertion of an entrapment defense as the virtual antithesis of acceptance of responsibility." Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997).

Here, the district court did not clearly err in refusing to apply an acceptance-of-responsibility sentence reduction. The court found, in light of all the facts and circumstances, that Walker had not displayed any "indication of contrition." Rather, Walker had proceeded to trial where he argued, among other things, that the undercover ATF agents induced him to sell and that someone else had cut the barrel of a shotgun that he sold to the agents. Additionally, unobjected-to facts in the presentence investigation report alleged that Walker declined to cooperate with the probation officer even after his convictions at trial.

Finally, nothing indicates that the court imposed a total 225-month sentence to punish Walker for exercising his right to trial. To the contrary, the court explicitly stated that Walker's sentence was in no way affected by his choice to go to trial, but instead reflected the seriousness of his criminal history and his

11

personal circumstances.  See Carroll, 6 F.3d at 740.

**AFFIRMED.**